UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MARCO VINICIO DEFAZ ACHI,

Petitioner,

v.

RAUL MALDONADO, *et al.*,

Respondents.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-05533 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On September 8, 2026, petitioner Marco Vinicio Defaz Achi ("Petitioner") filed a petition for a writ of habeas corpus against respondents Raul Maldonado Jr., in his official capacity as Warden of Metropolitan Detention Center ("MDC"), William Joyce, in his official capacity as New York City Deputy Field Office Director for United States Immigration and Customs Enforcement ("ICE"), David J. Venturella, in his official capacity as Acting Director for ICE, Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security ("DHS"), and Todd Blanche, in his official capacity as Attorney General of the United States ("Respondents"). *See generally* Emergency Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and for Declaratory and Injunctive Relief, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release or, alternatively, a bond hearing, and challenges the lawfulness of his re-arrest and detention by ICE under the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See id.*

For the following reasons, the Petition is denied.

**BACKGROUND**

Petitioner is a native and citizen of Ecuador. Pet. ¶ 14. Petitioner unlawfully entered the United States at an unknown place and at an unknown time. Declaration of Dmitry Rousseau ¶ 3, Dkt. 10-1 ("Rousseau Decl.").

On September 2, 2018, Petitioner was arrested by New York City Police Department ("NYPD") in Queens, New York, for violation of New York Penal Law ("NYPL") § 120.00(1) (assault in the third degree: with intent to cause physical injury), NYPL § 240.20 (disorderly conduct), and NYPL § 240.26(1) (harassment in the second degree). Rousseau Decl. ¶ 4.

On September 3, 2018, Petitioner was arrested by NYPD for violation of NYPL § 215.55 (bail jumping in the third degree). *Id.* ¶ 5.

On February 26, 2019, Petitioner received a final disposition for his September 2, 2018, arrest, pleaded guilty to NYPL § 240.20 (disorderly conduct) and received a sentence of a conditional discharge, rehabilitative program, and order of protection. *Id.* ¶ 6. That same day, Petitioner received a final disposition for his September 3, 2018 arrest, pleaded guilty to NYPL § 215.55 (bail jumping in the third degree), and was sentenced to time served with a $1,000 fine. *Id.* ¶ 6.

On July 30, 2019, the court issued a bench warrant against Petitioner and on January 25, 2025, Petitioner was resentenced to a 3-day jail term due to a violation of a conditional discharge. *Id.* ¶ 7.

On January 24, 2025, Petitioner was arrested by NYPD in Queens, New York, for violation of NYPL § 120.05(2) (assault in the second degree: with intent to cause physical injury with weapon or dangerous instrument), NYPL § 260.10(1) (acting in a manner injurious to a child less than 17), and NYPL § 240.26(1) (harassment in the second degree). *Id.* ¶ 8.

On March 6, 2025, Petitioner was arrested by ICE and Homeland Security Investigations ("HSI") officers pursuant to a Form I-200, Warrant of Arrest ("Form I-200"). *Id.* ¶ 9. He was taken into custody and detained pursuant to 8 U.S.C. § 1226(a), and issued and served a Form I-862, Notice to Appear ("NTA"), which charged him with inadmissibility pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* DHS filed the NTA with the Executive Office for Immigration Review ("EOIR") the same day, thereby commencing removal proceedings against Petitioner. *Id.*; Pet. ¶ 20.

On March 7, 2025, Petitioner was transferred from the New York City Hold Room located at 26 Federal Plaza, New York, to the Orange County Jail, where he was detained. Rousseau Decl. ¶ 10.

On March 14, 2025, Petitioner pursued custody review before an immigration judge ("IJ"). *Id.* ¶ 11; Pet. ¶ 21. On March 18, 2025, the IJ denied bond, finding Petitioner to be a danger to the community. Rosseau Decl. ¶ 12.

On May 12, 2025, Petitioner's charges from the 2025 arrest were dismissed pursuant to New York Criminal Procedure Law § 170.30(1)(e), speedy trial provision. *Id.* ¶ 15.

"On June 2, 2025, DHS filed a submission identifying Petitioner's RAP sheet and an expired order of protection as evidence." Pet. ¶ 22. On June 3, 2025, the IJ granted Petitioner's custody-redetermination request and ordered release under a $7,500 bond. *Id.* ¶ 23; Rousseau Decl. ¶ 17. On June 5, 2025, Petitioner posted bond and was released by ICE, subject to Alternatives to Detention ("ATD"). Rosseau Decl. ¶ 18.

On June 24, 2026, Petitioner was arrested by the New York State Patrol Thruway New Rochelle/Tarrytown Police for violation of New York Vehicle and Traffic Laws ("VTL") §1192.3

(driving while intoxicated) and VTL §1192.2 (operating a motor vehicle with .08 of 1 percent alcohol or more in blood). *Id.* ¶ 19.

On June 29, 2026, ICE issued a Form I-200, Warrant of Arrest for Petitioner ("June 29, 2026 Warrant"). *Id.* ¶ 20.

On June 30, 2026, ICE encountered Petitioner at the Queens ICE Office located at 163-18 Jamaica Ave, Jamaica, NY 11432, as he was reporting pursuant to his ATD. *Id.* ¶ 21. ICE Officers arrested Petitioner at approximately 8:12 a.m., pursuant to the June 29, 2026 Warrant, and Petitioner was taken to NYC Hold Room for processing. *Id.*

ICE performed an initial custody determination under 8 U.S.C. § 1226(a) ("Section 1226(a)" or "§ 1226(a)"), which included taking of fingerprints and conducting an interview. *Id.* ¶ 22. "ICE determined that Petitioner should be detained based on a material change in circumstance, *i.e.,* as he had not established that he did not pose a danger to persons or property based on his new arrest and pending criminal charges," and "further review of Petitioner's criminal history." *Id.* At around 8:35 a.m. on that same morning, ICE completed a Form I-286, Notice of Custody Determination, and served Petitioner with Form I-286 on June 30, 2026, which Petitioner signed, acknowledging that the contents of the notice were read to him in Spanish. *See* Notice of Custody Determination, Dkt. 10-4 (completed by an ICE Officer indicating the "Date and Time of Custody Determination" occurred on "06/30/2026 8:35 AM").

An "INA § 236(a) Initial Custody Determination" form ("*Velesaca* Worksheet")[1] indicates ICE determined the Petitioner did not establish that he did not pose a danger to persons or property and in the "Discussion" section, identifies "6/24/2026: Arrested/Charged with DWI / Pending,"

[1] Per the instructions section of this worksheet, "[p]ursuant to *Velesaca v. Decker*, 20-cv-1803 (S.D.N.Y.), ERO Officers at the New York City Field Office must utilize this form as part of the initial individualized custody determination under INA § 236(a)." *Velesaca* Worksheet and Form I-286 at 1.

"02/26/2019: Convicted of Bail Jumping," and "02/26/2019: Convicted of disorderly conduct." Petition Exhibit E at 1, Dkt. 1-5 ("*Velesaca* Worksheet and Form I-286"); *see* Pet. ¶ 34. With regard to flight risk, the *Velesaca* Worksheet indicates that ICE determined that Petitioner did not establish that he was not a flight risk and that no forms of release on conditions could mitigate the risk of flight. *Velesaca* Worksheet and Form I-286 at 2; *see* Pet. ¶ 35. The "Special Vulnerabilities" section does not reference Petitioner's possible victim-based immigration relief. Pet. ¶ 36; *see Velesaca* Worksheet and Form I-286 at 2. Under "INITIAL CUSODY DETERMINATION," the box "Detain" is completed, and the form is signed by a Supervisory Detention and Deportation Officer "Date: 6/30/3036" and "Time Completed*: 10:40AM." *Velesaca* Worksheet and Form I-286 at 2.

On June 30, 2026, Petitioner was transferred from the NYC Hold Room to the Delaney Hall Detention Facility in Newark, New Jersey, where he remained detained until July 8, 2026, and on July 8, 2026, Petitioner was transferred from Delaney Hall to the Metropolitan Detention Center in Brooklyn, New York. Rousseau Decl. ¶¶ 23-24.

DHS Form I-286 "Notice of Custody Determination" ("Form I-286"), dated July 10, 2026, states that Petitioner "will be [d]etained" by DHS and identifies July 10, 2026, at 8:57 p.m. as the "Date and Time of Custody Determination." *Velesaca* Worksheet and Form I-286 at 3. Petitioner signed an acknowledgement of receipt of Form I-286 and indicated that he requested review of the custody determination by an immigration judge. *Id.*

On July 21, 2026, the IJ denied Petitioner's request for a change in custody status with a written order marking "Danger to community." Pet. ¶ 42; *see also* Order of the IJ at 1, Dkt. 1-6. During the hearing, the IJ denied Petitioner's bond request, stating "I granted him bond, and he went out and drove drunk." Transcript of July 21, 2026 Bond Hearing at 4:10-11, Dkt. 17-2

("Bond Hearing Transcript"). The IJ further explained to Petitioner, "I granted you bond, in the exercise of my discretion . . . And then, you drove drunk. You took this court's trust and you threw it in the garbage. You don't get two chances." *Id.* at 4:14-15. Further, the IJ added "Counsel, your appeal is due August 20th." *Id.* at 4:20.

## PROCEDURAL HISTORY

On July 8, 2026, while Petitioner was believed to be detained in New Jersey, prior counsel filed a writ of habeas corpus in the U.S. District Court for the District of New Jersey, *see Defaz Achi v. Wilson*, 26-CV-08393-RMB (D.N.J.), which the court dismissed without prejudice and closed after determining that it lacked jurisdiction. Pet. ¶¶ 56-57.

On September 8, 2026, the Petition was filed in this Court, and the Court issued an Order to Show Cause, which ordered, *inter alia*, that Respondents file a return to the Order to Show Cause explaining why the Petition should not be granted by September 11, 2026, at 9:00 a.m., that the parties appear for a hearing on the Petition on September 11, 2026, at 1:00 p.m., or alternatively indicate that they waive the hearing, and to preserve the Court's jurisdiction pending a ruling on the Petition, Petitioner shall not be removed from the Eastern District of New York until further order of this Court. *See* Order to Show Cause, Dkt. 6 ("Order to Show Cause" or "OSC") (emphasis omitted). Respondents sought an extension of time until September 15, 2026, to respond to the Court's Order to Show Cause, which the Court granted, and scheduled an Order to Show Cause hearing for September 15, 2026. *See* Order, dated Sep. 10, 2026.

On September 15, 2026, Respondents submitted a letter response to the Court's Order to Show Cause arguing that the Court should dismiss the Petition as jurisdictionally barred or deny the Petition on the merits because Petitioner failed to appeal to the BIA the final order of removal issued by the Immigration Court. Respondents' Letter to the Court (Sep. 15, 2026) at 1, Dkt. 10 ("Return"). That same day, Petitioner submitted a reply asserting that Petitioner timely filed his

appeal with the BIA on September 11, 2026, and submitted an EOIR uploads webpage as an exhibit. Petitioner's Reply in Further Support of Petition for Writ of Habeas Corpus at 1, Dkt. 11 ("Reply").

On September 15, 2026, at the Order to Show Cause hearing, the Court directed Respondents to file a status report by September 17, 2026, regarding whether Petitioner's appeal was filed with the BIA, and continued the hearing to September 23, 2026. *See* Minute Entry, dated Sep. 15, 2026.

On September 17, 2026, Respondents filed a status report and provided the Court with the EOIR docket sheet reflecting that Petitioner's submission to the BIA on September 11, 2026, was rejected. Respondents' Letter to the Court (Sep. 17, 2026) at 1, Dkt. 12.

On September 22, 2026, Petitioner notified the Court that it had appealed this decision to the Board of Immigration Appeals ("BIA") on September 11, 2026, and attached a Notice of Rejected Filing from the BIA dated September 15, 2026, which stated that Petitioner's filing was rejected by the BIA "due to no fee attached." Petitioner's Letter to the Court (Sep. 22, 2026) at 1, 8, Dkt. 14. Upon receipt of the rejection notice on September 15, Petitioner refiled a corrected appeal with the BIA with a "MOTION TO ACCEPT UNTIMELY APPEAL." *Id.* at 1, 4.

On September 23, 2026, the Court held the continued Order to Show Cause hearing and granted the parties additional time for supplemental briefing in light of Petitioner's Letter to the Court (Sep. 22, 2026) providing the Court with the BIA Appeal Receipt. Minute Entry, dated Sep. 23, 2026.

On September 29, 2026, Respondents filed a supplemental letter and accompanying exhibits. *See generally* Respondents' Letter to the Court (Sep. 29, 2026), Dkt. 15 ("Supplemental Return" or "Suppl. Return").

On October 1, 2026, Petitioner filed a reply to Respondents' Supplemental Return, including exhibits. *See generally* Petitioner's Sur-Reply, Dkt. 16 ("Sur-Reply"). Petitioner notified the Court that on September 22, 2026, the BIA issued an Interim Order expressly holding that "'the respondent's appeal of the Immigration Judge's August 12, 2026, decision is considered timely filed' and directed that a briefing schedule be set." Sur-Reply at 1; BIA Interim Decision at 2, Dkt. 16-1.

On October 7, 2026, Respondents filed a certified transcript of Petitioner's July 21, 2026 bond hearing before EOIR. Respondents' Letter to the Court (Oct. 7, 2026), Dkt. 17; Bond Hearing Transcript.

**LEGAL STANDARD**

District courts are empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 18-CV-4189 (RWS), 2018 WL 2932726, at 6* (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

The parties agree that Petitioner is subject to discretionary detention under § 1226(a).[2] *See* Suppl. Return at 6 ("Petitioner is now again detained pursuant to INA § 236(a) [8 U.S.C. §1226(a)]."); Sur-Reply at 1. *Mathews v. Eldridge*, 424 U.S. 319 (1976), sets forth the test for determining whether ICE's detention of Petitioner violated his due process rights. Under that test, the Court must balance: (1) "the private interest that will be affected by the official action"; (2)

[2] The issue of whether Petitioner was subject to a final order of removal, which was initially contested, was resolved by the parties' supplemental briefing. *See generally* Suppl. Return; Sur-Reply.

"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

**DISCUSSION**

Petitioner asserts that his continued detention violates his due process rights under the Fifth Amendment because (1) ICE did not make an individualized changed-circumstances determination before Petitioner's arrest; (2) the July 21, 2026 bond hearing did not cure ICE's failure to make an individualized custody determination because the Immigration Court incorrectly applied the burden of proof; and (3) exhaustion does not bar the instant habeas corpus petition.[3] *See* Pet. ¶¶ 66-69, 76-80, 96-97.

In opposition, Respondents contend that (1) the Court is jurisdictionally barred from reviewing the IJ's July 21, 2026 order denying Petitioner's bond; (2) prior to commencing this action, Petitioner failed to exhaust his claims by appealing his July 21, 2026, bond determination to the BIA; and (3) Petitioner's challenge to his arrest and custodial determination fail. *See* Suppl. Return at 6, 8, 9.

At bottom, the primary question is whether the government's detention of Petitioner violates his due process rights. Accordingly, the Court applies the *Mathews* test. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

[3] Petitioner also contends that the *Velesaca* settlement "did not authorize revocation of Petitioner's judicial bond. Nor could the Government convert a re-arrest after judicial release into a clean-slate "initial" custody event merely by completing the [*Velesaca*] Settlement worksheet after arrest." Pet. ¶¶ 71-74. Because the applicability of *Velesaca* is uncontested by Respondents and unnecessary for the judgment *infra*, the Court declines to reach this argument. *See* Supplemental Return at 11 (citing the *Velesaca* settlement and stating that "[w]ere this Court to find that the custodial determination must be *prior or contemporaneous to* arrest, it would undermine the resolution of the *Velesaca* class action.").

Here, there is no question that Petitioner's interest in "being free from imprisonment" "is the most significant liberty interest there is." *Id.* Therefore, the Court's inquiry turns on "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews,* 424 U.S. at 335.

**A. ICE's Initial Custody Determination was Adequate**

Respondents contend that in its initial custody determination, "ICE determined that Petitioner should be detained based on a material change in circumstance, *i.e.*, as he had not established that he did not pose a danger to persons or property based on his new arrest and pending criminal charges." Suppl. Return at 10; *see also* Rousseau Decl. ¶ 22; *Velesaca* Worksheet and Form I-286 at 1-2. While Petitioner agrees that an individualized changed-circumstances custody determination was made, Petitioner argues that the "chronology establishes the constitutional defect" in that the determination did not take place "before or contemporaneous with" his arrest. *See* Sur-Reply at 1-2.

Petitioner's argument fails under the second *Mathews* factor. First, courts have held that "the due process framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), does not require immigration authorities to make individualized custody determinations prior to arrest, rather than shortly thereafter." *Gagea v. Maldonado*, 26-CV-4817 (RPK), 2026 WL 2859032, at *4 (E.D.N.Y. Sep. 23, 2026) (citing *Loja Loja v. Acting Field Off. Dir. of New York Ice Enf't & Removal Ops.*, 26-CV-5368 (JGK), 2026 WL 2321934, at *6-7 (S.D.N.Y. Aug. 10, 2026) (finding no due process violation where the initial custody determination was made about four hours after the petitioner's arrest); *see also Moscoso Bravo v. Genalo*, 26-CV-5687 (LJL), 2026 WL 2254682, at *6 (S.D.N.Y. Aug. 5, 2026) ("Particularly where the detaining officer has exercised discretion, the Supreme Court and Second Circuit have indicated that due process does not require that the noncitizen be heard at the precise moment of detention.") (citing *Demore*, 538 U.S. at 510, 526)

(citing *Velasco Lopez*, 978 F.3d at 853). As explained in *Loja Loja v. Acting Field Office Director of New York Ice Enforcement & Removal Operations*, "requiring the respondents to conduct an initial custody determination at the time of arrest rather than during processing would reduce the amount of information the respondents have about the noncitizen, which would increase the risk of erroneous deprivation." 2026 WL 2321934, at *6 (S.D.N.Y. Aug. 10, 2026) (emphasis in original) (finding no due process violation where an initial custody determination occurred within hours of the petitioner's arrest).

The authorities Petitioner relies on are distinguishable. Here, Petitioner was arrested under drunk driving statutes on June 24, a Form I-200, Warrant of Arrest was issued on June 29, and Petitioner was arrested at his ATP check-in the next day—only six days after his arrest for drunk driving. Rousseau Decl. ¶¶ 19-21; June 29, 2026 Warrant. Petitioner's individualized custody determination took place within an hour of his arrest. *See* Rousseau Decl. ¶¶ 21-22. Contrast this with the unconstitutional ex-post determinations in cases such as *Gopie v. Lyons*, 25-CV-05229 (SJB), 2025 WL 3167130, at *2-3 (E.D.N.Y. Nov. 13, 2025) (petitioner arrested following routine state court probation check-in not provided with individualized determination on day of arrest), *Artiga v. Genalo*, 25-CV-5208 (OEM), 2025 WL 2829434, at *9 (E.D.N.Y. Oct. 5, 2025) (the respondents conceded that there was not an individualized determination), *Batten Herrera v. Blanche*, 26-CV-03321 (OEM), 2026 WL 1674206, at *4 (E.D.N.Y. June 10, 2026) (following arrest under § 1225(b)(2)(A), no initial custody determination as required by § 1226(a) was made for three months), *Yin v. Maldonado*, 26-CV-0103 (PKC) 2026 WL 295389, at *2 (E.D.N.Y. Feb. 4, 2026) (following arrest under § 1225(b)(2)(A), the respondents conceded there had been no initial custody determination as required by § 1226(a)), and *Acevedo Terrero v. Tsoukaris*, 26-cv-00869 (NCM), 2026 WL 607917, at *2-3 (E.D.N.Y. Mar. 4, 2026) (finding arrest unlawful when

made pursuant to determination made hours before the actual arrest and giving the petitioner no opportunity to demonstrate release would not pose a danger).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. June 18, 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Requiring an individualized custody determination before conducting an arrest and before prompt post-arrest processing would likely impose additional burdens without the benefit of information typically gathered during processing. *Loja Loja*, 2026 WL 2321934, at *7. Petitioner makes no argument otherwise.

Despite Petitioner's significant liberty interest, the second and third *Mathews* factors weigh against Petitioner. Taken together, Petitioner's ongoing detention does not violate his due process rights.

**B. Under 8 U.S.C. § 1226(e), This Court is Jurisdictionally Barred from Reviewing the Immigration Judge's Order.**

Respondents are correct that "Section 1226(e) provides that '[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review.'" Suppl. Return at 2 (alteration in original) (quoting 8 U.S.C. § 1226(e)). However, Respondents also recognize that Section 1226(e) "'does not preclude challenges to the extent of the Government's detention authority under the statutory framework as a whole'" or "'limit habeas jurisdiction over constitutional claims or questions of law.'" *Id.* at 7 (quoting *Batista v. Genalo*, 26-CV-05408 (MKV), 2026 WL 2169849 at *3 (S.D.N.Y. July 28, 2026); *see also Quille v. Blanche*, 26-CV-2818 (HG), 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026); *Batten Herrera*, 2026 WL

1674206, at *2; *Pastrana-Beltran v. Mullin*, 26-CV-2657 (RER), 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) ("Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." (citing *Zadvydas*, 533 U.S. at 687)).

To the extent that Petitioner challenges the discretionary initial custody determination or the IJ's determination that Petitioner is a danger to the community, the Court has no jurisdiction to hear those claims and an appeal to the BIA is the appropriate relief. *See Batista*, 2026 WL 2169849, at *3 ("Critically, the initial custody determination by ICE under Section 1226(a) is largely a matter of discretion that cannot be second-guessed by this Court." (citing 8 U.S.C. § 1226(e))); *Fontanelli ex rel. Bernal Garcia v. Francis*, 25-CV-07715 (JLR), 2025 WL 2773234, at *6, *8 (S.D.N.Y. Sept. 29, 2025) ("a bond hearing is the appropriate avenue for [Petitioner] to challenge the substance of ICE's individualized determination, which is outside the Court's jurisdiction."); *Lantigua v. Decker*, 17-CV-4880 (LGS), 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017) ("An assertion that an IJ . . . misread, misunderstood, or misapplied the law in weighing factors relevant to the grant or denial of discretionary relief does not convert what is essentially an argument that an IJ . . . abused their discretion into a legal question." (quoting *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006))); *see also Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019) ("§ 1226(e) precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [the petitioner] is a danger to the community." (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018))).

Additionally, Petitioner argues that the July 21, 2026 bond hearing was constitutionally defective because the IJ placed the burden on Petitioner to show, "by clear and convincing

evidence," "that release would not pose a danger and that he is likely to appear." Sur-Reply at 2. District courts—including this Court—have held in some circumstances that due process requires a burden-shifted bond hearing where the Government bears the burden of proof. *See, e.g.*, *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (collecting cases); *see also Habib v. Maldonado*, 26-CV-2038 (OEM), 2026 WL 1088618, at *4-5 (E.D.N.Y. Apr. 22, 2026). "But [p]arties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quoting *Lattab v. Ashcroft*, 384 F.3d 8, 20 (1st Cir. 2004). As discussed above, Petitioner did not suffer a due process violation during his re-arrest and, further, was not prejudiced by any alleged constitutional defect during the bond hearing, as "there is no basis to believe that shifting the burden to the government would have affected the outcome." *Lazaro Santos v. ICE Immigration (DHS)*, 26-CV-3044 (AS), 2026 WL 1725111, at *2 (S.D.N.Y. June 15, 2026). The same IJ who previously granted Petitioner's bond denied it at the July 21, 2026 bond hearing, stating that "I granted you bond, in the exercise of my discretion . . . And then, you drove drunk. You took this court's trust and you threw it in the garbage. You don't get two chances." Bond Hearing Transcript at 4:14-16. Because Petitioner fails to show any prejudice based on what party bore the burden of proof, the Court need not opine on issue of burden shifting at the July 21, 2026 bond hearing.

## CONCLUSION

For the foregoing reasons, the Petition is denied. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

*/s/*

ORELIA E. MERCHANT
United States District Judge

October 19, 2026
Brooklyn, New York